IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE TOLBERT, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21-cv-6922 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| NATIONSTAR D/B/A MR. COOPER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff George Tolbert brings this action against defendant Nationstar Mortgage

LLC d/b/a Mr. Cooper, alleging that defendant violated Sections 2605(e) and (k) of the Real

Estate Settlement Procedures Act (RESPA). RESPA is a consumer protection statute regulating

the servicing of loans and imposes a duty on loan servicers to timely respond to certain borrower

inquiries. On July 19, 2024, defendant moved for summary judgment, (Dckt. #156), and filed a

Rule 56.1 Statement of Material Facts, (Dckt. #158 ("DSOF")), supporting memorandum, (Dckt.

#157), and Local Rule 56.2 notice, (Dckt. #161). Plaintiff failed to *substantively* respond despite

being granted an extension and filing many voluminous documents, (Dckt. ##164,

166-71,173-74, 176-79, 181-84). Defendant filed a reply on September 18, 2024, (Dckt. #172).

For the reasons that follow, the Court grants summary judgment in favor of defendant because

plaintiff failed to send a qualified written request to defendant as required by RESPA.

## I.      LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when

the moving party shows that "there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247 (1986). Issues of fact are material if they are outcome determinative. *Hottenroth*

*v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to create factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Evidence considered on a summary judgment motion "need not be admissible in form, but must be admissible in content, such that, for instance, affidavits may be considered if the substitution of oral testimony for the affidavit statements would make the evidence admissible at trial." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016). Furthermore, courts do not weigh the evidence or resolve conflicts in the record at summary judgment; instead, they review the evidence presented in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. *NES Rental Holdings, Inc. v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013). Summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up).

## II.     FACTUAL RECORD

### A.  Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). In turn, Local Rule 56.1(d) requires that "[e]ach asserted

fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it.  The court may disregard any asserted fact that is not supported with such a citation."  LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statement of material facts.  *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e).  If a party fails to respond to the Rule 56.1 statement of uncontested facts, those facts are deemed admitted to the extent they are supported by the evidence in the record.  *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); LR 56.1(e)(3).

In this case, defendant filed a Local Rule 56.1 statement of material facts with its motion for summary judgment, (Dckt. #158), which included proper citations to the evidentiary material supporting each fact.  Because plaintiff is a *pro se* litigant, defendant also served him with a "Notice to Unrepresented Litigant Opposing Summary Judgment" as required by Local Rule 56.2.  (Dckt. #161).  This notice explains the meaning of a motion for summary judgment, the requirements for responding to both the motion and Local Rule 56.1 statement of material facts, and—perhaps most significantly—the consequences of failing to properly respond to a summary judgment motion and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

Plaintiff submitted multiple filings purporting to address defendant's motion for summary judgment.  (Dckt. ##164, 166-71,173-74, 176-79, 181-84).  However, none of plaintiff's seventeen filings properly respond to defendant's statement of material facts.[1]  And, while

---

[1] This Court cautioned plaintiff that he was not permitted to submit additional filings absent leave of Court and admonished him for filing voluminous documents and purported exhibits out of turn and after the summary judgment briefing schedule elapsed.  (Dckt. ##175, 180).  Despite this, plaintiff failed to obey the Court's instructions.

plaintiff's filings contain headings that purport to respond to defendant's motion, (*e.g.*, Dckt. #168 at 1 ("Response to Defendant's Request for Summary Judgment"); Dckt. #170 at 1 ("Petitioner's Response to Defendant Nationstar's Request for Summary Judgment Rule 56")), the content of the filings do not, in fact, respond to defendant's motion. Plaintiff also includes his own statement of facts in at least one of his filings, (Dckt. #168 at 10-16), but it largely consists of conclusory statements related to state court foreclosure and eviction proceedings and asserts legal conclusions related to claims that are not relevant to the pending case, (*see id*. at 10 ("Nationstar violated Frank Dodd Act"); 11 ("the collaborative effort on the part of nationsattar[sic] and mortgage contracting services is racketeering.")). Plaintiff also failed to properly cite any evidentiary material to support his statement of facts or include numbered paragraphs as required by Local Rule 56.1.

As such, the Court deems defendant's statement of material facts admitted to the extent that the facts asserted therein are supported by the evidence in the record. *Keeton*, 667 F.3d at 880; *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."). The Court does so even in consideration of plaintiff's *pro se* status given that defendant provided plaintiff with the requisite Local Rule 56.2 notice to unrepresented individuals. *See Coleman v. Goodwill Indus. of Se. Wisconsin, Inc.*, 423 Fed.Appx. 642, 643 (7th Cir. 2011). It is well-settled that a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules, including Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Brown v. Erickson*,

No. 16 C 50337, 2019 WL 1532887, at *1 (N.D.Ill. Apr. 9, 2019) ("Plaintiff's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1."); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules").

**B.     Relevant Facts**

Plaintiff initially filed this action on December 30, 2021, along with an application to proceed *in forma pauperis* ("IFP"), (DSOF ¶1; Dckt. #1). The complaint largely refers to a state court proceeding involving the foreclosure of plaintiff's property. This Court has repeatedly informed plaintiff that it lacks jurisdiction "to overturn a state court decision," (Dckt. #28 at 7; *see also* Dckt. #87 ("As the foreclosure is a state court proceeding, this Court lacks jurisdiction to review it."); Dckt. #107 ("This court will never have the authority to set aside the foreclosure.")). After the complaint was dismissed without prejudice pursuant to 28 U.S.C. §1915(e) because it failed to allege a basis for federal jurisdiction or otherwise explain what cause of action plaintiff intended to pursue, (Dckt. #6), plaintiff thereafter filed several distinct complaints on the docket, (Dckt. ##7, 10, 12, 15, 16, 23). This Court ultimately allowed plaintiff's April 6, 2022, complaint to proceed and granted his IFP application. (Dckt. #28).

The April 6, 2022, operative complaint alleged two claims: 1) a violation of RESPA Section 2605(e) and (k), (DSOF ¶3; Dckt. #23 at 8-11); and 2) a violation of the Residential Mortgage Lending Act (RMLA) under Ohio Law R.C. 1322.01. (Dckt. #23 at 11-12). The RMLA claim under Ohio Law was dismissed in May 2022 because plaintiff lives in Illinois, the property at issue is located in Illinois, and defendant is organized under Illinois law with its principal place of business in Illinois. (Dckt. #28 at 5 (citing Dckt. #1 ¶¶1-2, 4)). Only plaintiff's RESPA claim remains.[2]

---

[2] Plaintiff's operative complaint cites to both 12 U.S.C. §2605 and 12 CFR §1024.35 as the basis for his claim titled "failure to timely and properly respond to request for information," (Dckt. #23 at 8), but 12

Plaintiff provides almost no factual allegations in support of his RESPA claim. Plaintiff alleges that he sent a notice of error[3] to defendant, his mortgage servicer, and that defendant "failed to properly accept and/or apply payments to the loan and imposed fees against the loan" and "failed to timely respond to the [notice of error]," thereby violating RESPA. (DSOF ¶5; Dckt. #23 ¶¶55-59). Plaintiff did not attach the notice of error to his complaint. (DSOF ¶6; see generally Dckt. #23). As a result, this Court ordered plaintiff to "file a response providing more information as to when his Notice of Error (NOE) was sent and where he sent the NOE" and directing him to "attach a copy of the NOE to his response." (Dckt. #66). Plaintiff failed to comply with that order, instead filing a document titled "Miscellaneous Motion to Provide Details, Request Information/Notice of Error and Motion to Stay Eviction." (DSOF ¶7; Dckt. #67).

In May 2023, this Court permitted limited discovery "to determine whether [defendant] has a record of any correspondence from [plaintiff] that would qualify as a 'qualified written request' under RESPA." (DSOF ¶10; Dckt. #90). Defendant filed its production on the docket pursuant to court order, and the production included several communications between plaintiff and defendant. (DSOF ¶¶14-18; Dckt. #128). Included in the production, and incorporated in the motion for summary judgment, are:

1) a June 15, 2017 email describing a call with plaintiff where he complained that his "doors were kicked in and [] locks broken" along with June 16, July

---

CFR §1024.35—referred to as "Regulation X"—was promulgated pursuant to RESPA and "implements section 6(k)(1)(C) of RESPA, and to the extent the requirements are also applicable to qualified written requests, sections 6(e) and 6(k)(1)(B)." *Starke v. Select Portfolio Serv. Inc.*, No. 17 C 4123, 2017 WL 6988657, at *5 (N.D.Ill. Dec. 18, 2017). Because RESPA is the corresponding statute to Regulation X, there is only one cause of action.

[3] Plaintiff uses both "request for information" and "notice of error" in his complaint. (Dckt. #23 at 8-11). Notice of Error is defined in Regulation X, 12 CFR §1024.35(a), as "[a] qualified written request that asserts an error relating to the servicing of a mortgage loan." This Court uses the broader term of "qualified written request" for purposes of this Memorandum Opinion and Order.

24, and July 25, 2017 response letters from defendant stating that plaintiff's loan was referred to foreclosure in May 2017, and that a vendor posted a notice on the property, deemed it vacant, and subsequently rekeyed the property pursuant to the terms of the notice and plaintiff's vendor's guidelines, (Dckt. #128-3 at 29-36);

2) an October 4, 2018, letter from defendant denying plaintiff's request for mortgage modification, (*id*. at 74-78);

3) a November 8, 2018, letter from plaintiff stating he disagrees with defendant's decision to deny his modification request along with a November 29, 2018, response letter from defendant explaining why the modification request was denied, (*id*. at 70-73);

4) a December 21, 2018, letter from defendant again denying plaintiff's request for mortgage modification, (*id*. at 84-88);

5) a February 11, 2019, letter from plaintiff claiming defendant's attorney told him he would be offered a mortgage modification and a February 19, 2019, response letter from defendant (*id*. at 79-83);

6) a September 13, 2019, letter from defendant informing plaintiff that his loan servicing was being transferred to another company effective October 1, 2019, (*id*. at 14-17); and

7) a September 26, 2021 "Consumer Complaint Online Submission Form" from the Illinois Attorney General where plaintiff alleged defendant entered his home prior to foreclosure along with October 7 and 21, 2021, response letters from defendant explaining that plaintiff's loan was referred to foreclosure on May 23, 2017, that it has no evidence it entered plaintiff's property, and that the servicing of plaintiff's loan was referred to another company on October 1, 2019, (*id*. at 10-13).

Defendant also incorporates an August 27, 2018, letter that plaintiff produced in response to defendant's discovery requests. (DSOF ¶12; Dckt. #157-5 at 9).

## III. ANALYSIS

RESPA is a "consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011). Relevant here is the statute's duty on servicers to respond to borrower inquiries. 12 U.S.C. §2605. A borrower must submit a "qualified written request" to

trigger the servicer's duty under RESPA to acknowledge and respond. *Id.*; *Catalan*, 629 F.3d at 680. A qualified written request is a written correspondence requesting information or stating reasons why the borrower believes his or her account to be in error. 12 U.S.C. §2605(e)(1)(B). The borrower's written communication *must* request information relating to the "servicing" of the loan. 12 U.S.C. §2605(e)(1)(A) (emphasis added). RESPA clarifies that "servicing" can include two possible actions by the loan servicer: (1) "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan"; and (2) "making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. §2605(i)(3); *Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 856-57 (7th Cir. 2017) ("[A] qualified written request can't be used to collect information about, or allege an error in, the underlying mortgage loan.").

The servicer must acknowledge receipt of the qualified written request within five days, 12 U.S.C. §2605(e)(1)(A), and must "make appropriate corrections" or provide the borrower with a written explanation or clarification that includes the information requested, an explanation as to why the information requested is unavailable or cannot otherwise be obtained, or "a statement of the reasons for which the servicer believes the account of the borrower is correct." *Id.* §2605(e)(2)(A)–(C). Regardless of the response, the servicer must also provide the borrower with contact information of an individual employed by the servicer who can provide further assistance. *Id.* RESPA provides borrowers with a private right of action for violations, *id.* §2605(f), but to state a valid claim under Section 2605, a plaintiff must file suit within three years of the alleged violation. *Id.* §2614.

It is plaintiff's burden to produce evidence sufficient to demonstrate a violation of RESPA. "To survive summary judgment, the nonmoving party must show evidence sufficient to establish every element that is essential to [his] claim and for which [he] will bear the burden of proof at trial." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 349 (7th Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Put another way, taking plaintiff's allegations as true, he must allege enough to demonstrate that he submitted a qualified written request to defendant and that defendant failed to respond within the required timeframe, leading to plaintiff suffering damages. *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676, 693 (7th Cir. 2011).

As a threshold issue, neither party disputes defendant's status as a "servicer" under RESPA. 12 U.S.C. §2605(i)(2) (defining "servicer" as "the person responsible for servicing of a loan")). The operative complaint alleges that plaintiff sent a request to defendant and that defendant failed to respond. (DSOF ¶5; Dckt. #23 ¶¶55-59). The complaint alleges that the request concerned defendant's "fail[ure] to properly accept and/or apply payments to the loan" and its imposition of "fees against the loan," (*id*.). Because plaintiff has not substantively responded to defendant's motion in support of his allegations, the Court looks to the undisputed statement of facts which incorporates the various communications between the parties. (DSOF ¶16; Dckt. #157-7). For the following reasons, plaintiff's RESPA claim fails because he has offered insufficient evidence to at least create a genuine issue of fact as to whether he sent a qualified written request to defendant.

**A.** **Plaintiff's communications with defendant that occurred more than three years prior to this case are time-barred and cannot serve as a basis for a RESPA violation.**

As an initial matter, many of plaintiff's communications with defendant were sent over three years prior to plaintiff filing suit and are therefore time-barred. *See* 12 U.S.C. §2614 (establishing a three-year time limit to file claims). Thus, to the extent plaintiff is attempting to base his RESPA claim on the following communications, they are plainly time-barred: 1) the June 2017 correspondence, (Dckt. #128-3 at 29-36); 2) the August 2018 letter, (Dckt. #157-5 at 9); 3) the October 2018 correspondence, (Dckt. #128-3 at 74-78); 4) the November 2018 correspondence, (*id.* at 70-73); and 5) the December 2018 correspondence, (*id.* at 84-88).

The remaining communications then include the February 11, 2019, letter from plaintiff and defendant's response, the September 13, 2019, letter from defendant to plaintiff, and the September 26, 2021 "Consumer Complaint Online Submission Form" and defendant's response. (Dckt. #128-3 at 10-17, 79-83). According to defendant, these too must be time-barred because "any [c]orrespondence [p]rior to April 6, 2019 [c]annot [s]upport a [c]laim for [a v]iolation of RESPA." (Dckt. #157 at 5). The Court disagrees. Plaintiff filed this lawsuit on December 30, 2021, when he contemporaneously filed his complaint and IFP application. (Dckt. ##1, 4). This Court dismissed plaintiff's complaint without prejudice and denied his IFP application. (Dckt. #6). Several months later, this Court granted plaintiff's IFP motion and directed the clerk to file plaintiff's April 6, 2022, complaint as the operative complaint. (Dckt. ##23, 28). Defendant claims that plaintiff's initial filing date of December 30, 2021, is immaterial, even though the communications at issue were sent within three years of that date. (Dckt. #157 at 5). In support, defendant claims that the April 6, 2022, complaint cannot "relate back" to the December 30, 2021, complaint because the December 30, 2021, complaint was dismissed at the screening stage

10

and therefore never "filed" and because the December 30, 2021, complaint failed to "allege conduct, transactions, and/or occurrences that would give rise to a claim for violations of RESPA." (*Id.*).

But, as explained in *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1020-21 (N.D.Ill. 2013), "[t]he later amended complaints and the rulings on them were merely a continuation of the original action stemming from the timely filed original complaint." In *Luevano*, the court entered an order dismissing the plaintiff's original complaint and denying her IFP application, noting that the complaint failed to state a claim and that the court would reconsider should plaintiff amend her pleading. *Id.* at 1021. Under the federal rules, as long as the action remains pending, as occurred here, an amended complaint will relate back to the original complaint when it arises out of the "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The only difference here is that plaintiff is not a fee-paying litigant but rather applied for IFP status pursuant to 28 U.S.C. §1915(e)(2). But this distinction is inconsequential as "IFP plaintiffs have the same right as other plaintiffs to amend a timely filed complaint at least once as a matter of course pursuant to [Rule] 15(a) and to make further amendments with leave of court." *Luevano*, 722 F.3d at 1023.

Here, plaintiff's case remained pending after dismissal of the December 30, 2021, complaint. (Dckt. #6 ("[p]laintiff may file an amended complaint")). In addition, while plaintiff's complaints are difficult to follow, they all relate to his concerns regarding the foreclosure of his property and his relationship with defendant, his loan servicer at one point in time. (*See* Dckt. ##1, 23). This Court therefore finds that the April 23, 2022, complaint "relates back" to the original December 30, 2021, complaint. *See Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001) (relation back "has its roots in the equitable notion that dispositive decisions

11

should be based on the merits rather than technicalities"). The February 2019, letter therefore is not time barred because it was sent within three years of the December 30, 2021, complaint. The same analysis applies equally to the September 2019 and 2021 communications.

**B.     None of plaintiff's remaining communications with defendant rise to the level of qualified written requests as required by RESPA.**

Even though certain of plaintiff's communications are not time-barred, none of them constitute a "qualified written request" under RESPA. As stated above, RESPA requires a borrower to send a qualified written request that alleges account error or requests information pertaining to the "servicing" of his or her account. 12 U.S.C. §2605(e)(1)(A)-(B). As a general matter, "servicing" can mean a loan servicer's receipt of a borrower's payments pursuant to the loan's terms or, once received, a loan servicer's use of the borrower's payments to pay the principal, interest, or other payments, as required by the loan's terms. *Id.* §2605(i)(3). Once a loan servicer receives a qualified written request, it must acknowledge receipt of the request within five days and either respond or provide a written explanation within thirty days, accompanied with contact information of an individual who can provide further assistance. *Id.* §2605(e)(1)(A), (e)(2)

Plaintiff's February 11, 2019, letter to defendant states: "during my foreclosure hearing, your attorney said I was to be offered a modification. To this date I have received no correspondence. This letter is a formal request for a modification." (Dckt. #128-3 at 79 (cleaned up)). This letter does not relate to the "servicing" of his loan as contemplated by RESPA. *See* 12 U.S.C. §2605(i)(3); *Mikulski v. Wells Fargo Bank, N.A.*, No. 17 CV 179, 2017 WL 3701213, at *2 (N.D.Ill. Aug. 25, 2017) (without the requirement that they relate to the servicing of a loan, "the definition of a [qualified written request] would be so broad as to lose any meaning."). Plaintiff's letter is essentially a request to reconsider a modification on his loan terms. But

12

correspondence "related to a loan modification" is not a qualified written request. *Mikulski*,

2017 WL 3701213, at *3; *see also Moore v. F.D.I.C.*, No. 08 C 596, 2009 WL 4405538, at *3-4

(N.D. Ill. Nov. 30, 2009) (reasoning that written requests for reinstatement of a defaulted

mortgage did not fall under either of the statute's definitions of "servicing"). In *Vangsness v.*

*Deutsche Bank Nat'l Trust Co.*, No. 12 C 50003, 2012 WL 5989354, at *5 (N.D.Ill. Nov. 29,

2012), the court held that a letter asking for a loan modification and a letter asking for a response

to the modification request did not qualify as qualified written requests because the letters "do

not ask for any information or allege any errors in the account." The same is true here.

Regardless, defendant responded to plaintiff's letter on February 19, 2019. (Dckt. #128-3

at 80-83). Defendant's response letter acknowledges receipt of plaintiff's letter and states that its

"records do not reflect that [its attorney] advised [plaintiff] that the account would be approved

for modification assistance" and requested plaintiff to "provide the supporting documentation"

for his claim. (*Id*.) The letter then explained why plaintiff's account was denied a modification.

(*Id*. at 99). Therefore, even though the February 11, 2019, letter did not constitute a qualified

written request, defendant still acknowledged receipt of the letter within five days[4] and provided

a written explanation as to why the modification request was denied. (*Id*. at 98-99).

Defendant's September 2019 letter to plaintiff also fails to qualify as a qualified written

request because defendant reached out to plaintiff, rather than the other way around. Indeed, in

that letter, defendant informed plaintiff that defendant would no longer service his loan as of

October 1, 2019. (*Id*. at 14-17). As for the September 2021 correspondence, it relates to a

"Consumer Complaint" plaintiff submitted to the Illinois Attorney General and likewise cannot

be a qualified written request because, as explained in the September 2019 letter, defendant no

---

[4] Defendant's February 19, 2022, response letter states that it received plaintiff's letter on February 18, 2022. (Dckt. #157-7 at 98).

longer serviced plaintiff's loan. (*Id.* at 10-13). But even if defendant remained a "servicer" to plaintiff's loan, plaintiff's September 2021 "Consumer Complaint" fails to satisfy the RESPA's requirements for a qualified written request. As noted above, a servicer's duty to respond "does not arise with respect to *all* inquiries or complaints from borrowers" but "only written requests alleging account error or seeking information relating to servicing." *Perron on behalf of Jackson*, 845 F.3d at 857 (internal quotation omitted (emphasis in original)). Plaintiff's complaint that "Nationstar[] illegally entered [plaintiff's] home prior to foreclosure" simply does not allege account error or seek information relating to servicing. (*See* Dckt. #123-8 at 10). The Court notes that here too defendant responded within the required timeframe, despite the fact that the complaint was not a qualified written request. In particular, defendant responded on October 7, 2021, stating that it received the complaint that same day and again responded on October 15, 2021, with a written explanation that it no longer serviced plaintiff's loan; the loan was referred to foreclosure in 2017; and it had no record of entering the property. (*Id.* at 11-13); 12 U.S.C. §2605(e)(1)(A), (e)(2).[5]

Because plaintiff has failed to establish that he sent a qualified written request to defendant, defendant's motion for summary judgment is granted.

---

5 The Court also notes that defendant briefly mentions plaintiff's "Miscellaneous Motion" and some of its attachments. (Dckt. #157 at 3-4; Dckt. 157-4; Dckt. #67). Notably, this Court has already reviewed plaintiff's miscellaneous motion in its order denying defendant's motion to dismiss. (Dckt. #87 at 4). In any event, the attachments are not qualified written requests. The attachments include: 1) an undated screenshot of plaintiff's email inbox, (Dckt. #67 at 6); 2) a subpoena for documents dated June 2, 2022, (id. #67 at 7-9); and 3) screenshots of a June to July 2022 email conversation between plaintiff and "antony.villani@mr.cooper.com"—an alleged employee or agent of defendant, (id. at11-12). The undated screenshot of plaintiff's email inbox does not contain any requests for information and cannot be a qualified written request. The June 2022 subpoena and email conversation both occurred after plaintiff filed this lawsuit and therefore cannot form the basis for his allegations. (See Dckt. #90 (limited discovery ordered for correspondence "PRIOR to Plaintiff filing this lawsuit")).

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment, (Dckt. #156), is granted.

**Date: December 19, 2024**

_____

**Jeffrey I. Cummings**
**United States District Court Judge**